No. 14-1271

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**BRANDON TAYLOR**

**Plaintiff-Appellant**

v.

**PENINSULA REGIONAL MEDICAL CENTER**

**Defendant-Appellee**

_____

**Appeal from the United States District Court
for the District of Maryland
(Honorable William M. Nickerson)**

_____

**BRIEF OF APPELLANT**

_____

**ROBIN R. COCKEY
COCKEY, BRENNAN & MALONEY, PC
313 Lemmon Hill Lane
Salisbury Maryland 21801
(410) 546-1750**
*Attorney for Appellant*

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER
## ENTITIES WITH A DIRECT FINANCIAL INTEREST IN LITIGATION

Only one form need be completed for a party even if the party is represented by more than one attorney.  Disclosures must be filed on behalf of individual parties as well as corporate parties. Disclosures are required from amicus curiae only if amicus is a corporation.  Counsel has a continuing duty to update this information. Please file an original and three copies of this form. No.  14-1271          Caption:          Brandon Taylor v. Peninsula Regional Medical Center

Pursuant to FRAP 26.1 and Local Rule 26.1, Brandon Taylor_____ who is          Appellant_____ _____makes the following disclosure:

1 .     Is party/amicus a publicly held corporation or other publicly held entity?
              ( )  YES                    ( X )  NO
2.      Does party/amicus have any parent corporations?
              ( )  YES                    ( X )  NO

        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3 .     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?

              ( )  YES                    ( X )   NO

        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

              ( )  YES                    ( X )  NO

        If yes, identify entity and nature of interest:

5.      Is party a trade association?

              ( )  YES                    ( X )  NO

        If yes, identify all members of the association, their parent corporations, and any publicly held companies that own 10% or more of a member's stock:

_____/s/_____          May 22, 2014_____
          (signature)                                      (date)

i

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ......................................... i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ...................................................... 1

ISSUES PRESENTED........................................................................ 1

STATEMENT OF THE CASE ............................................................ 2

STATEMENT OF THE FACTS .......................................................... 2

STANDARD OF REVIEW ............................................................... 10

SUMMARY OF ARGUMENT ......................................................... 11

ARGUMENT.................................................................................... 12

      I.     THE DISTRICT COURT ERRONEOUSLY DETERMINED, AS A MATTER OF LAW, THAT MR. TAYLOR FAILED TO DEMONSTRATE THAT PRMC¢S ALLEGED NON-RETALIATORY REASONS FOR HIS DISMISSAL WERE PRETEXTUALí í .12

CONCLUSION ................................................................................ 21

REQUEST FOR ORAL ARGUMENT ............................................. 22

CERTIFICATE OF COMPLIANCE................................................. 23

CERTIFICATE OF SERVICE......................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                                               **PAGE**

*Allen v. Interior Const. Services, Ltd.*, 214 F.3d 978 (8th Cir. 2000) ................. 20

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ....................................... 10

*Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536 (4th Cir. 2003) ............. 12

*Gibson v. Marjack Co., Inc.,* 718 F. Supp. 2d 649 (D. Md. 2010) ...................... 13

*Holland v. Washington Homes, Inc.,* 487 F.3d 208 (4th Cir. 2007) ................... 12

*Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004) .............................................. 14

*Pueschel v. Peters,* 577 F.3d 558 (4th Cir. 2009) .............................................. 11

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000) ................. 14

*Romeo v. APS Healthcare Bethesda, Inc.,* 876 F. Supp. 2d 577
    (D. Md. 2012) ................................................................................... 13-14

*Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46
    (1st Cir. 2000) ...................................................................................... 10

*Shipbuilders Council of Am. v. U.S. Coast Guard,* 578 F.3d 234
    (4th Cir. 2009) ...................................................................................... 10

*Smith v. Chrysler Corp.,* 155 F.3d 799 (6th Cir. 1998) ...................................... 13

*Warren v. Halstead Indus., Inc.*, 802 F.2d 746 (4th Cir. 1986) .......................... 19

**STATUTES, RULES, & CONSTITUTIONAL PROVISIONS**                **PAGE**

  28 U.S.C. § 1291 ................................................................................... 1

  28 U.S.C. § 1331 ................................................................................... 5

42 U.S.C. § 1981 ...............................................................1, 2, 10, 12

42 U.S.C. §2000(e) ................................................................. 1, 10

Fed.R.Civ.P. 56(c) .................................................................. 10

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. § 1331, Brandon Taylor ("Mr. Taylor"), filed suit in the United States District Court for the District of Maryland against his former employer, Peninsula Regional Medical Center ("PRMC" or "the Hospital"). Mr. Taylor, who is African American, asserted claims against PRMC pursuant to 42 U.S.C. §2000(e) ("Title VII") and 42 U.S.C. § 1981. Mr. Taylor alleged he was fired in retaliation for complaining about the discriminatory acts of PRMC executives.  Joint Appendix ("JA") 6-15.  The lower court dismissed Mr. Taylor's Complaint via Summary Judgment on the basis that, while Mr. Taylor presented a *prima facie* case of retaliation, he failed to demonstrate that PRMC's alleged non-retaliatory reasons for his dismissal were pretextual. *Id*. at 803-26. Mr. Taylor timely noted his appeal on Mach 26, 2014. *Id.* at 340.  Accordingly, under 28 U.S.C. § 1291, this appeal is properly before the United States Court of Appeals for the Fourth Circuit, as the appeal arises from a final order of the District Court disposing of all claims with respect to all parties.

## ISSUES PRESENTED

1.    Did the District Court erroneously find, as a matter of law, that Mr. Taylor failed to demonstrate that PRMC's alleged non-retaliatory reasons for his dismissal were pretextual.

1

## STATEMENT OF THE CASE

Mr. Taylor brought suit against his former employer, PRMC, alleging illegal retaliation and discrimination under both Title VII and 42 U.S.C. §1981.  Mr. Taylor later voluntarily dismissed his claims of discrimination.   JA 805. With respect to his retaliation claims, Mr. Taylor alleged he was terminated for complaining about the discriminatory conduct of his supervisors.   On September 16, 2013, after the close of discovery, Appellee moved for summary judgment.  On March 10, 2014, the District Court granted the dispositive motion, finding that although Mr. Taylor presented a *prima facie* case of retaliation, he failed to demonstrate that PRMC's alleged non-retaliatory reasons for his dismissal were pretextual. This appeal followed.

## STATEMENT OF THE FACTS

Mr. Taylor went to work for PRMC on June 12, 2006. JA 510. Mr. Taylor was hired in the Protection Services Department as "Security Police," and held the rank of Private. *Id. at* 513-15; 597.  In this capacity, Appellant was charged with maintaining a safe, secure condition in and around the Hospital.  *Id.* at 597.  In early 2007, Mr. Taylor was promoted to Private First Class and, in May 2010, he was promoted to Corporal. *Id.* at 513-15.  In addition to promotions, Mr. Taylor was rewarded for his excellent job performance through raises and positive performance evaluations.  Specifically, during his tenure with PRMC, Mr. Taylor

received seven raises; the last occurring on June 6, 2010 (just over one month before his termination). *Id.* at 285. In addition, Mr. Taylor consistently received satisfactory performance evaluations and, until the events giving rise to this case, was never the subject of disciplinary action. *Id.* at 599-600.

In the summer of 2009, Mr. Taylor overheard the Executive Director of Facilities and Properties, Bruce Patterson ("Mr. Patterson"), make what he reasonably perceived to be a racially derogatory statement. *Id.* at 530. Specifically, Mr. Patterson made a statement to the effect of "get these damn Mexicans off the property" over PRMC's internal radio system ("Mexican comment"). *Id.* Mr. Taylor discussed Mr. Patterson's statement with his coworkers Tyrone Douglas[1] ("Mr. Douglas"), Thomas Worden ("Mr. Worden"), and Michelle Savage. *Id.* at 542. Mr. Taylor complained about Mr. Patterson's statement the following day to his supervisor Anthony Tull ("Sergeant Tull")[2]. Mr. Taylor, who was particularly offended because his biracial children are Hispanic, relayed Mr. Patterson's statement to Sergeant Tull and expressed that he was greatly disturbed by the comment. *Id.* at 545; 569. Sergeant Tull indicated that he was already aware of Mr. Patterson's statement and told Mr. Taylor to "leave it alone." *Id.* at 567-68. Appellant did not hear anything further regarding his complaint after this

---

[1] Mr. Douglas later confirmed via text message to Mr. Taylor that he heard Mr. Patterson make the Mexican comment. JA 609.
[2] Mr. Taylor's direct supervisor was Anthony Tull, who reported to Alonzo Tull, who, in turn, reported to Bruce Patterson. JA 798.

conversation with Sergeant Tull. *Id.* at 527.

During his employment Mr. Taylor became concerned that he was earning less than his white coworkers.  On one occasion, Mr. Worden and Mr. Taylor discussed their salaries and Mr. Taylor learned that Mr. Worden had a higher hourly rate. *Id.* at 518-19.  Mr. Worden also told Mr. Taylor that he previously saw Mark Mitchell's ("Mr. Mitchell") paystub, and that he also earned more than Mr. Taylor.  *Id.* at 520-21.  Mr. Mitchell later confirmed to Mr. Taylor that his rate of pay was in fact higher. *Id.*  After learning this information, Mr. Taylor complained about the pay disparity to Sergeant Tull, who directed him to discuss the issue with the Director of Protection Services, Alonzo Tull ("Chief Tull"). *Id.* at 524-25. Thereafter, Mr. Taylor relayed his pay related concerns to Chief Tull and identified that, while he has more responsibility and experience than Mr. Mitchell and Mr. Worden, he is paid less. *Id.* at 526. He also expressed his perception that the pay disparity was based on the fact he is African American and both Mr. Worden and Mitchell are white.  *Id.*  Despite Chief Tull's assurances that he would "handle it," Mr. Taylor heard nothing further regarding his pay. *Id.* at 527.

 On June 28, 2010, Mr. Patterson placed Mr. Taylor on administrative leave as a result of an incident which occurred a few days prior in the Emergency Department ("ED incident").  *Id.* at 610-12; 651. On that day, an intoxicated woman fell in the Emergency Department and it was not readily apparent whether

she lost her balance or if her fall was the result of a push or shove coming from Mr. Worden. *Id.* at 601-605; 610-12. Mr. Patterson placed Mr. Taylor and two other officers on administrative leave until the Hospital could investigate whether the patient's fall was the result of a push or merely her own intoxicated status. *Id.* at 602. While there was no allegation that Mr. Taylor pushed the patient, Mr. Taylor was disciplined for failing to enter the room to assist the patient to her feet. *Id.* at 606-12.

After learning of his administrative suspension, on July 2, 2010 Mr. Taylor went to speak with PRMC's Executive Vice President and Chief Operating Officer Lura "Cindy" Lunsford ("Ms. Lunsford"). *Id.* at 654; 662-66. Mr. Taylor expressed concerns that the discipline was unfair because he responded to the situation exactly as he was trained. *Id.* at 654. Specifically, Mr. Taylor challenged his discipline on the grounds that PRMC policy prohibited the officers from assisting the fallen patient, as only medical staff is authorized to address potentially injured patients. *Id.* at 657. Mr. Taylor also complained to Ms. Lunsford about what he perceived to be racially discriminatory actions of Mr. Patterson and, specifically, informed Ms. Lunsford of Mr. Patterson's prior comment regarding "get[ing] the damn Mexicans off the property." *Id.* at 656. Appellant explained that he was uncomfortable with Mr. Patterson conducting the investigation into the ED incident because he felt Mr. Patterson's racial bias would affect the outcome.

*Id* at 570.  After her meeting with Mr. Taylor, Ms. Lunsford investigated the ED incident and ordered that the discipline be revoked on the theory that Mr. Taylor acted in accordance with Hospital policy by not attempting to move a potentially injured patient without medical assistance. *Id.* at 657.  It was also determined that the patient was not pushed, but rather lost her balance and fell. *Id.* at 605; 610-12.

Thereafter, on July 7, 2010, the Vice President of People and Organizational Development, Sara Scott ("Ms. Scott"), summoned Mr. Taylor to a meeting. *Id.* at 662-66.   At the time, Mr. Taylor was under the impression that the purpose of the meeting was to discuss the concerns he voiced to Mr. Lunsford regarding Mr. Patterson's racial bias. *Id.* at 576-77.  When he arrived, Mr. Taylor learned that Ms. Scott's primary purpose for the meeting was to discuss an allegation that Chief Tull had sexually harassed a female coworker. *Id.* at 576-77; 617.  The specific allegation was that Chief Tull had "tickle-pinched" the nipples of a female employee while he was taking her fingerprints. *Id.* at 235. Mr. Taylor's only involvement in the matter was that the complainant relayed to Ms. Scott that Mr. Taylor had knowledge of a prior sexual harassment complaint made against Chief Tull, and that Mr. Taylor had encouraged her to report her concerns to Human Resources (consistent with PRMC's internal sexual harassment policy).  *Id.* at 616-17; 635.

In discussing Chief Tull's alleged sexual harassment with Ms. Scott, Mr.

Taylor indicated he did not remember the name of the female employee with whom he previously spoke regarding Chief Tull's actions. *Id.* at 636. Mr. Taylor explained that while he had heard allegations against Chief Tull, he knew nothing further and had no personal knowledge of Chief Tull acting inappropriately. *Id.* at 579-80. Although the majority of the meeting was dedicated to the sexual harassment allegations concerning Chief Tull, Mr. Taylor was able to express some of the concerns he previously discussed with Ms. Lunsford. *Id.* at 582.83. In response, Ms. Scott directed Mr. Taylor to create a narrative outlining his concerns. *Id.* at 582-83; 667-69. That document, which was provided to Ms. Scott, identified that Mr. Taylor believed he was unfairly disciplined by Mr. Patterson in connection with the ED incident, and also reiterated his concerns regarding Mr. Patterson's Mexican comment. *Id.* Mr. Taylor also noted that he felt "there are racial issues with Bruce Patterson," and that he was unfairly passed over for the opportunity of carrying a weapon. *Id.* Mr. Taylor also expressed his concern that he was paid less than white officers, even though he was the "ranking officer over them." *Id.*

Ms. Scott met with Mr. Taylor again on July 15, 2013. *Id.* at 662-66. While Mr. Taylor thought the purpose of the meeting was to address his concerns, Ms. Scott again focused her effort on eliciting more information regarding Chief Tull's alleged sexual harassment. *Id.* at 583. Mr. Taylor informed Ms. Scott that he had

already told her everything he knew. *Id.* at 584.  While, again, the focus of the meeting was on Chief Tull, Ms. Scott and Mr. Taylor did briefly review his complaints. *Id.* at 585.  Ms. Scott's notes from her meetings with Mr. Taylor and deposition testimony confirm they discussed Appellant's complaints of Mr. Patterson's Mexican comment, the unfair discipline issued in connection with the ED incident, white officers being paid more and carrying guns, and general "racial issues" within PRMC. *Id.* at 670; 638.  Ms. Scott also confirmed in her deposition that Mr. Taylor also informed her that he had filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at  638.

At the end of the July 15, 2010 meeting, Ms. Scott became frustrated with Appellant's inability to provide further information regarding Chief Tull, and, as a result, presented Mr. Taylor with a pre-drafted Non-Disclosure/Non-Disparagement Agreement. *Id.* at 633; 671. This Agreement broadly prohibits Mr. Taylor from discussing or disclosing "any aspect of this matter to anyone," and from "otherwise mak[ing] disparaging comments about" PRMC. *Id.* at 671. While the Agreement is titled "Non-Disclosure/Non-Disparagement Agreement," it is clearly a notice of suspension, as it provides: "you are instructed to surrender your employee identification badge and… leave the property of [PRMC] immediately…  you are not permitted on the property of [PRMC]." *Id.*  During her deposition, Ms. Scott alleged that she placed Mr. Taylor on administrative leave

during this meeting because "of his refusal to cooperate during an investigation and his continued changing of stories and his behavior in [her] office." *Id.* at 628-29.

After his suspension, Mr. Taylor had no contact with PRMC until he received a notice of Disciplinary Action dated July 16, 2010. *Id.* at 672-73. This notice alleges that Mr. Taylor verbally resigned on July 19, 2010 (three days after the notice was dated) in a conversation with Ms. Lunsford's assistant, Karen Long ("Ms. Long"), but that PRMC had not received written confirmation of the resignation. *Id.* Nonetheless, PRMC stated "your resignation is accepted and your employment separation will be effective July 26, 2010." *Id.*

After his termination, Mr. Taylor filed for unemployment insurance benefits and PRMC contested his entitlement to such benefits. *Id.* at 674-761. At the unemployment insurance hearing PRMC officials testified that Mr. Taylor was discharged from employment for alleged misconduct. *Id.* at 693-94 ("We waited for his resignation. When he didn't submit his resignation, we decided that we had to bring this to closure somehow. Based on the conduct that he exhibited with Ms. Scott on July 15, our decision, had he not chosen to resign, our decision would have been to terminate. So for all intents and purposes this is a discharge."). On May 12, 2011, the Maryland Department of Labor, Licensing and Regulation issued an Unemployment Insurance Appeals Decision. *Id.* at 762-64. That

Decision identifies that Mr. Taylor was, in fact, discharged, albeit not for misconduct connected with his work, and awards Appellant unemployment insurance benefits. *Id.*

Mr. Taylor filed a Charge of Discrimination with the EEOC on January 19, 2011. *Id.* at 765. On November 30, 2012, the EEOC issued a so-called right to sue letter. *Id.* at 776. Thereafter, Mr. Taylor filed suit asserting claims for retaliation and discrimination pursuant to 42 U.S.C. §2000(e) and 42 U.S.C. § 1981. *Id.* at 6-15.

## STANDARD OF REVIEW

The Court of Appeals reviews the District Court's grant of summary judgment *de novo*. *Shipbuilders Council of Am. v. U.S. Coast Guard*, 578 F.3d 234, 243 (4th Cir. 2009). Summary judgment is appropriate only õif the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.ö Fed.R.Civ.P. 56(c). An issue is õgenuineö õif the evidence is such that a reasonable jury could return a verdict for the nonmoving party,ö *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986), and a fact is õmaterialö if it has the õpotential to affect the outcome of the suit,ö *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000) (internal quotation marks omitted). To the extent facts are disputed, the court must view

those facts in a light most favorable to the non-moving party. *Pueschel v. Peters,* 577 F.3d 558, 563 (4th Cir. 2009).

Thus, in this case, the District Court's judgment may be upheld only if that judgment is correct as a matter of law and there are no material factual disputes, even viewing the facts in the light factorable to the Appellant, Mr. Taylor.

<u>**SUMMARY OF ARGUMENT**</u>

While the District Court properly determined that Mr. Taylor presented a *prima facie* case of retaliation, that Court erred significantly in accepting PRMC's alleged nondiscriminatory reasons for Mr. Taylor's termination. Any allegation of poor performance by Mr. Taylor is clearly a pretext, as Mr. Taylor's performance evaluation given just one month before his termination praised Appellant for his excellent performance and commitment to his job. The Court also erred in accepting PRMC's allegation that Mr. Taylor could have been terminated for allegedly failing to cooperate with the sexual harassment investigation concerning Chief Tull. Not only is there no evidence suggesting Mr. Taylor willingly refused to cooperate, but it is out outrageous to suggest that Mr. Taylor could have been terminated in connection with his participation in a protected sexual harassment investigation. Accordingly, the lower court's decision is erroneous and must be reversed as PRMC's explanation for Appellant's termination is unworthy of credence, and Mr. Taylor presented

11

sufficient evidence probative of retaliation.

## ARGUMENT

**I.**   **THE DISTRICT COURT ERRONEOUSLY DETERMINED, AS A MATTER OF LAW, THAT MR. TAYLOR FAILED TO DEMONSTRATE THAT PRMC'S ALLEGED NON-RETALIATORY REASONS FOR HIS DISMISSAL WERE PRETEXTUAL.**

Mr. Taylor alleged claims of retaliation pursuant to both Title VII and 42 U.S.C. § 1981. Specifically, Mr. Taylor alleged he was terminated in retaliation for complaining about discriminatory acts of PRMC executives.   A plaintiff can prove illegal retaliation under Title VII or § 1981 if he shows that "(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity. *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) ("a plaintiff can prove illegal retaliation under ... § 1981 in the same manner as he establishes retaliation under Title VII").  Once the plaintiff makes this case, the employer can defend itself by producing evidence of a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.*  If this burden is met, the presumption is rebutted and the employee must prove that the employer's proffered reasons are pretextual.  *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 218 (4th Cir. 2007).

12

Here, the lower court determined that Mr. Taylor presented a *prima facie* case of retaliatory discharge.  The lower court, however, went on to note that PRMC presented three alleged nondiscriminatory reasons for Appellant's discharge: failure to cooperate with the sexual harassment investigation regarding Chief Tull, failure to assist an employee in the parking garage, and improper conduct during Mr. Taylor's meeting with Ms. Scott.  Having determined that PRMC met its burden of producing evidence of a legitimate, non-discriminatory reason for taking the adverse employment action against Mr. Taylor, the Court then analyzed whether Mr. Taylor could establish that PRMC's proffered reasons are pretextual.  It was in performing this last step of the analysis that the trial court erred.

"An employee can prove pretext by offering evidence that challenges the employer's explanation for discharging him." *Gibson v. Marjack Co., Inc.,* 718 F. Supp. 2d 649, 657 (D. Md. 2010).  Specifically, pretext can be established by "offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805-06 (6th Cir. 1998).  A plaintiff can also prove pretext by "showing that the [defendant's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of retaliation." *Romeo v. APS Healthcare Bethesda, Inc.,* 876

13

F. Supp. 2d 577, 589 (D. Md. 2012) *(citing Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004)). The Fourth Circuit has opined that "a prima facie case coupled with probative evidence that the employer's explanation is false, would counsel against granting the employer summary judgment unless the employer presented other strong evidence from which no reasonable fact finder could conclude that there was discrimination." *Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004)(*citation and quotation omitted*).

In the similarly analyzed discrimination context, the Supreme Court has opined that "proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000). The *Reeves* Court also noted that "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.*

Mr. Taylor's first evidence of pretext is the fact that PRMC alleged in its summary judgment motion that it did not terminate Mr. Taylor but, rather, Mr. Taylor resigned. JA 820. Certainly PRMC cannot have a legitimate, nondiscriminatory reason for terminating Mr. Taylor when it adamantly contends that Mr. Taylor was never terminated. PRMC's stance on the facts surrounding

Mr. Taylor's departure from PRMC demonstrates Appellee's flip-flopping of positions in this matter. First, when it benefited PRMC at the unemployment hearing to contend that Mr. Taylor was terminated, PRMC officials testified that Mr. Taylor was terminated for misconduct. Later, in filing summary judgment, PRMC took the position that Mr. Taylor was not terminated and had in fact resigned. It is hard to take seriously any allegation made by PRMC regarding Mr. Taylor's separation from employment, as PRMC cannot maintain a consistent position as to whether Mr. Taylor resigned or was terminated.

Moreover, PRMC's assertion that, even if Mr. Taylor was terminated, his termination would have been based on misconduct, conflicts with the evidence in this matter. Specifically, both Ms. Scott and Ms. Lunsford testified at their depositions that, at the time of Mr. Taylor's separation from employment, the investigation into Appellant's actions had not yet concluded and PRMC had not yet made a decision to terminate him. JA 649-50; 658-61. The lower court therefore erred in not only resolving the factual dispute of whether Mr. Taylor was terminated or resigned, but in accepting PRMC's argument that, if Mr. Taylor was terminated, he was terminated for misconduct. This decision is erroneous because the deposition testimony of PRMC officials confirmed that PRMC had not made a decision to terminate Mr. Taylor.

In looking at the three alleged legitimate, non-discriminatory reasons

proffered by PRMC for Mr. Taylor's termination, each of these reasons is clearly a pretext and further exhibits that the sole reason for Mr. Taylor's termination was his protected complaints.  PRMC does not dispute that Mr. Taylor was an excellent employee, and, prior to the ED incident discipline (which was ultimately revoked on the basis that it was unwarranted), had never been reprimanded or admonished. In fact, the last of Mr. Taylor's seven raises occurred on June 6, 2010 - just over one month before his termination.   Mr. Taylor's June 11, 2010 performance evaluation (like all prior evaluations) identifies that Appellant is "very dependable and reliable always willing to help anyone without any hesitation,"  "displays a strong personal commitment to successfully completing all assignments that are given to him in timely and professional manner," and "is very knowledge and secure in his job." JA 784-95. In ranking Mr. Taylor's performance, Sergeant Tull awarded Appellant scores of 3s and 4s (out of 4) in all categories. *Id.* Mr. Taylor's history of commendable job performance, coupled with this most-recent evaluation, highlights the pretextual nature of Appellee's assertions that it had cause to terminate Appellant's employment.

In granting summary judgment the lower court accepted PRMC's contention that Mr. Taylor's termination could have been based on his actions in connection with an incident that occurred in the parking lot on July 2, 2010 ("the parking lot incident").  This basis is obviously a pretext, as it cannot be shown that Mr. Taylor

did anything wrong on that occasion.  Appellee suggests that Mr. Taylor could have been disciplined for failing to assist a distressed employee in a parking garage on July 2, 2010 (Mr. Taylor was never actually disciplined for this alleged occurrence).  This allegation is suspect, in and of itself, given that Ms. Scott testified that the investigation into that incident had not yet concluded when Mr. Taylor was placed on administrative leave. JA 649-50.  While PRMC alleges that Mr. Taylor "changed his story" when asked about the parking lot incident, Appellant explained that when he first discussed the matter with Ms. Scott, he was confused about the nature of the allegations and the timing/location of the event. JA 589-95. Mr. Taylor's initial confusion regarding the parking lot incident is plausible, as Mr. Taylor thought his meetings with Ms. Scott were for the purpose of discussing his complaints of discrimination, and he was obviously unprepared to address new, unrelated allegations.   Nonetheless, now that Mr. Taylor is aware of the nature of the allegations levied against him, he presents a reasonable explanation.  Mr. Taylor explained in his deposition that he never "refused" to assist the employee in the parking lot.  Rather, when the employee called to complain that a cleaning vehicle was circling her car, Mr. Taylor (who was watching the incident on the internal surveillance system) explained that the cleaning vendor was merely doing his/her job and needed to circle the car in order to clean that parking lot.  *Id.* at 589-91.  Given Mr. Taylor's track record of

excellent performance and his supervisor's evaluation that he was "always willing to help anyone," it is suspect that PRMC alleges Mr. Taylor willfully refused to help an allegedly distressed employee.

Appellee's allegations regarding Mr. Taylor's alleged wrongdoing in connection with the sexual harassment investigation highlight the retaliatory proclivities of PRMC. Mr. Taylor's only involvement with the sexual harassment complaint levied against Chief Tull was that he was aware that a female coworker previously complained about Chief Tull, and he encouraged the complainant to report the conduct to Human Resources. Mr. Taylor has consistently maintained that he was unable to further assist with the investigation because did not know any additional information. PRMC attempted to classify Mr. Taylor's lack of knowledge as being "uncooperative," when, in reality, Mr. Taylor merely had nothing further to add to the investigation. By not speculating about Chief Tull's alleged conduct, Mr. Taylor was trying to avoid doing the very thing PRMC now accuses him of: making false statements. It is outrageous to assert that Mr. Taylor could have been disciplined for participating in an investigation into whether a high-ranking PRMC employee sexually harassed a subordinate. This is especially true in light of the undisputed fact that Mr. Taylor did not initiate the investigation into Chief Tull's actions, but rather only corroborated the allegations that Chief

Tull had acted inappropriately.[3]

The lower court also accepted PRMC's allegation that Mr. Taylor could have been disciplined for his conduct in Mr. Scott's office on July 15, 2010. This contention is similarly unsupported. While Mr. Taylor does not refute that a mutual, verbal disagreement took between him and Ms. Scott, he adamantly denies engaging in threatening or offensive behavior. PRMC failed to present any specific threatening statements made by Mr. Taylor. Rather, Ms. Scott testified in her deposition that Mr. Taylor acted inappropriately by attempting to leave when Ms. Scott asked him to sit and wait for a copy of his notice of suspension. JA 643-44. Clearly Ms. Scott was not threatened by Mr. Taylor's conduct, as she returned to her office alone to continue her discussion with him after copying the notice. *Id.* at 646-47. In granting summary judgment, the lower court inappropriately adopted PRMC's conclusory allegations which are unsupported by Ms. Scott's testimony and directly conflict with Mr. Taylor's undisputed track record of years of exceptional performance.

Courts have determined that close temporal proximity between an employees's protected action and his discharge can also give rise to an inference of pretext. *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, 758 (4th Cir. 1986) *on reh'g,* 835 F.2d 535 (4th Cir. 1988)(holding that the proximity of the filing of the

---

[3] Chief Tull was not disciplined for his alleged conduct. JA 804.

EEOC charge on January 15, 1979 and plaintiff's firing on February 2, 1979 gives rise to an inference of pretext and suggests discharge had a retaliatory motive). Here, Mr. Taylor made several protected complaints in early July 2010. The last complaint occurred on July 15, 2010 – one day before PRMC drafted his notice of separation. This timing gives rise to an inference that PRMC sought to terminate Mr. Taylor in retaliation for complaining about discrimination and any other alleged basis for the termination in clearly a pretext.

To establish a fact issue on pretext, a plaintiff must present evidence that: (1) creates a factual dispute as to whether the employer's proffered reasons for taking adverse employment action are pretextual; and (2) allows a reasonable jury to infer that the employer's action was motivated by a discriminatory animus. *Allen v. Interior Const. Services, Ltd.*, 214 F.3d 978, 983 (8th Cir. 2000). Certainly, the evidence marshalled by Mr. Taylor in response to PRMC's proffered reasons for his termination, at the very least, leads to an inference that PRMC was motivated to terminate Mr. Taylor in retaliation for his discrimination complaints. Accordingly, resolution of this matter was for the jury and the lower court acted erroneously in accepting PRMC's proffered basis and ignoring Mr. Taylor's credible evidence of pretext. The trial court's decision, therefore, must be reversed.

20

## <u>CONCLUSION</u>

Mr. Taylor respectfully requests that this Honorable Court reverse the decision of the United States District Court for the District of Maryland, remand the case to that court for further proceedings, and grant Mr. Taylor such other and further relief as the nature of his cause may warrant.


Respectfully submitted,


_____/s/_____
ROBIN R. COCKEY
COCKEY, BRENNAN & MALONEY, PC
313 Lemmon Hill Lane
Salisbury MD 21801
(410) 546-1750
Attorneys for Appellant

# <u>REQUEST FOR ORAL ARGUMENT</u>

Appellant respectfully requests oral argument.


_____/s/_____
ROBIN R. COCKEY
COCKEY, BRENNAN & MALONEY, PC
313 Lemmon Hill Lane
Salisbury MD 21801
(410) 546-1750
Attorneys for Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

**No**. 14-1271_____ **Caption**:___Brandon Taylor v. Peninsula Regional Medical Center

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

*[Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines; Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines; any Reply or Amicus Brief may not exceed 7,000 words or 650 lines; line count may be used only with monospaced type]*

[X]    this brief contains 4,768 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____[*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

*[14-point font must be used with proportional typeface, such as Times New Roman or CG Times; 12-point font must be used with monospaced typeface, such as Courier or Courier New]*

[X]    this brief has been prepared in a proportionally spaced typeface using

Microsoft Word 2003 [*state name and version of word processing program*] in Times New Roman 14 point font [*state font size and name of the type style*]; or

[ ]    this brief has been prepared in a monospaced typeface using

_____ _____ [*state name and version of word processing program*] with_____ _____[*state number of characters per inch and name of type style*].


_____/s/_____

Attorney for Appellant_____

Dated:_May 22, 2014_____

24

## CERTIFICATE OF SERVICE

I certify that on  May 22, 2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving two true and correct copies at the addresses listed below:

Randi Klein Hyatt, Esquire
Kevin M. Cox, Esqurie
Kollman & Saucier, PA
1823 York Road
The Business Law Building
Timonium, MD 21093


_____/s/_____          May 22, 2014_____
        Signature                                     Date

25